RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0222P (6th Cir.)
File Name: 03a0222p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ELDA SAN JUANITA
REGALADO,
  *Petitioner-Appellant,*

  *v.*

UNITED STATES OF AMERICA,
  *Respondent-Appellee.*

No. 01-1774

———————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 00-00640—Gordon J. Quist, District Judge.

Argued: March 13, 2003

Decided and Filed: July 7, 2003

Before: MOORE and GIBBONS, Circuit Judges; COHN,
Senior District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC
DEFENDERS OFFICE, Grand Rapids, Michigan, for
Appellant. Timothy P. VerHey, UNITED STATES

———————————

[*] The Honorable Avern Cohn, Senior United States District Judge for
the Eastern District of Michigan, sitting by designation.

ATTORNEY, Grand Rapids, Michigan, for Appellee.
**ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC
DEFENDERS OFFICE, Grand Rapids, Michigan, for
Appellant. John C. Bruha, UNITED STATES ATTORNEY,
Grand Rapids, Michigan, for Appellee.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Elda San
Juanita Regalado ("Regalado") pleaded guilty to a single
count of conspiracy to possess with intent to distribute and to
distribute an unspecified amount of marijuana. She was
sentenced to 151 months in prison based on the offense and
enhancements for obstruction of justice and leadership. After
her sentencing hearing, Regalado initially expressed interest
in appealing her sentence, but her retained attorney instead
advised pursuit of relief under Federal Rule of Criminal
Procedure 35(b). When Regalado ultimately did not receive
a sentence reduction for substantial assistance pursuant to
Rule 35(b), she filed a motion for relief under 28 U.S.C.
§ 2255 to vacate, set aside, or correct her sentence on two
grounds. First, Regalado claimed that her Sixth Amendment
right to effective assistance of counsel was violated when her
attorney failed to file an appeal at her request. Second, she
asserted that her sentence violated *Apprendi v. New Jersey*,
530 U.S. 466 (2000), because although her indictment failed
to indicate the specific amount of marijuana involved in the
conspiracy, she was sentenced in excess of the default
statutory sixty-month maximum provided in 21 U.S.C.
§ 841(b)(1)(D). After the district court denied her § 2255
motion, she appealed and this court granted a certificate of
appealability as to both issues. We now **AFFIRM** the district
court's decision denying Regalado § 2255 relief with respect
to both issues.

## I. BACKGROUND

Regalado was indicted in the Western District of Michigan, along with four others, for conspiring to possess with intent to distribute and to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846. The indictment did not include a drug quantity but instead cited 21 U.S.C. § 841(b)(1)(B), which states the penalty for conspiring to possess with intent to distribute or to distribute at least 100 kilograms of marijuana. Regalado was told at her arraignment that she faced not less than five and not more than forty years in prison for this offense.

On April 26, 1999, Regalado pleaded guilty to the sole count in the indictment. At her guilty plea hearing, Regalado accepted responsibility for her involvement in supplying approximately 500 pounds (approximately 225 kilograms) of marijuana. Specifically, when asked how much marijuana she supplied to her contact in Lansing, Michigan over the life of the conspiracy, she testified:

> I'd say a little bit over 500 and some pounds. I don't exactly know the exact amount but more or less it's give or take. There was three — there was four times, four trips, and the first one was 100 and the second one was 132, and then there was another one for 60 and then the 100 and — what I was told there were 120 that when they got stopped and they got arrested it was — I understand that it's — there were 135 pounds, but to my knowledge it was supposed to be 120 pounds.

Joint Appendix ("J.A.") at 169 (Plea Hr'g). Thereafter, in a sentencing memorandum, she again acknowledged her involvement with these large marijuana transactions. Specifically, she took responsibility for organizing "four deliveries to Borrego as follows: June, 1997, 60 lbs.; July, 1997, 132 lbs.; August, 1997, 172 lbs.; and October, 1997, 135 lbs." J.A. at 275 (Def.'s Statement Adopting Findings of Presentence Report).

At her sentencing hearing, Regalado received a sentence consistent with a base offense level of 26 and a finding that she was involved with 100 to 400 kilograms of marijuana (220 to 880 pounds). Over Regalado's objections, she received enhancements pursuant to U.S. Sentencing Guidelines ("U.S.S.G.") §§ 3B1.1 and 3C1.1, for being a leader in the conspiracy and for obstruction of justice. She also objected to the sentencing court's decision not to reduce her guideline range for acceptance of responsibility. In light of the sentence enhancements, Regalado's total offense level was 32, which resulted in a guideline range of 151-188 months in prison; Regalado received a sentence at the lowest end of this range.

Regalado insists that she informed her trial attorney, Robert Yzaguirre ("Yzaguirre"), on more than one occasion that she wanted to appeal her sentence. Both Regalado and Yzaguirre admit that she expressed this desire immediately after sentencing, before they even left the courtroom. Yzaguirre explains their interaction in the following testimony:

> You see, it wasn't so much her asking me to appeal her case, it was me telling her that I didn't think that that was the route to go . . . . But I can understand how she as the defendant is thinking that I'm helping her — which I was trying to help her — and she's not a lawyer. She could very well have been thinking that I was doing the appeal when I wasn't. I was doing — I was trying to do the Rule 35.

J.A. at 131-32 (Yzaguirre Cross Exam.). Regalado also claims that she placed a phone call to her lawyer the day after sentencing and told him "that no matter what I still wanted him to appeal my case." J.A. at 105 (Regalado Direct Exam.).[1] According to Yzaguirre, however, he thought it best

---

[1] Yzaguirre's testimony indicates otherwise: "[S]he never did call me and say, now, Mr. Yzaguirre, I am telling you right now, I want you to file my appeal before the ten days are up. That never happened." J.A. at 136 (Yzaguirre Cross Exam.).

to provide assistance to the government and then pursue relief through Rule 35(b) because he feared an appeal might only result in a longer sentence. Although he admits that Regalado initially discussed an appeal, Yzaguirre insists that Regalado "never instructed" him to file an appeal. J.A. at 133 (Yzaguirre Cross Exam.).[2]

On August 25, 2000, Regalado filed a pro se motion for relief from her sentence pursuant to 28 U.S.C. § 2255. After appointing a Public Defender to represent Regalado with respect to this motion, the district court referred Regalado's ineffective assistance of counsel and *Apprendi* claims to a magistrate judge for an evidentiary hearing. After hearing testimony from Yzaguirre and Regalado, the magistrate judge recommended to the district judge that Regalado's petition be dismissed on both grounds. The magistrate judge concluded

---

[2]Yzaguirre also submitted an affidavit. His sworn statement reads: I was present with Ms. Regalado for her Plea and her Sentencing and at neither time was I requested to file an Appeal on her behalf. Several months after her Sentencing[,] Ms. Regalado contacted me about the possibility of the *Apprendi* decision being beneficial to her situation. After reviewing her case vis a vis the *Apprendi* decision, I advised Ms. Regalado of my opinion that *Apprendi* was not likely to provide her any relief and I declined to represent her in pursuing same. At no time was I instructed to pursue an appeal nor was I ever engaged for any other post-conviction matters for Ms. Regalado.

J.A. at 62 (Yzaguirre Aff.). Yzaguirre further denied any specific instruction in response to a question from the bench:
THE COURT: [I]n order to grant the relief of a new appeal — . . . . I would have to find one of a couple things. One thing that I could find is that you were directly instructed to appeal and that you were ineffective because you ignored your client's directions. It doesn't sound to me like you're saying that's what happened.
THE WITNESS: It didn't happen that way, your Honor.

J.A. at 137 (Yzaguirre Redirect Exam.). Even though Yzaguirre's testimony indicates that he wasn't expressly instructed to file an appeal, it is clear that he would like the court to give Regalado the "benefit of the doubt" and grant her a late appeal. J.A. at 132 (Yzaguirre Cross Exam.); *see id.* at 138 ("If I made a mistake I made a mistake and I'm asking the Court to give her the benefit of the doubt.").

---

that Regalado "acquiesced in Mr. Yzaguirre's strategy to seek a reduction of sentence instead of an appeal." J.A. at 81 (Report and Recommendation). In addition, the magistrate judge made the factual finding that Regalado "did not, at any time, specifically direct Mr. Yzaguirre to file an appeal." *Id.* The magistrate judge also determined that Regalado's *Apprendi* claim failed because she never established cause and prejudice for not raising this issue on direct appeal. The district court adopted the magistrate judge's report and recommendation and denied Regalado's petition. Regalado filed a timely notice of appeal and requested a certificate of appealability which the district court denied. On January 11, 2002, this court granted a certificate of appealability as to both issues.

## II. ANALYSIS

### A. Standard of Review

On appeal from the denial of a § 2255 motion, we review legal conclusions de novo and factual findings for clear error. *Wright v. United States*, 182 F.3d 458, 463 (6th Cir. 1999). "A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)). As long as the district court has interpreted the evidence in a manner consistent with the record, "the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574.

### B. Ineffective Assistance of Counsel

The Sixth Amendment of the United States Constitution provides that: "[i]n all criminal prosecutions, the accused

shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court identified the purpose of the Sixth Amendment right to counsel as a means of "assur[ing] that in any criminal prosecution the accused shall not be left to his own devices in facing the prosecutorial forces of organized society." *Moran v. Burbine*, 475 U.S. 412, 430 (1986) (quotations and citations omitted).

The Court's recent decision in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), announced that the test for assessing ineffective assistance of counsel for failure to file a notice of appeal is the familiar two-pronged inquiry of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Roe*, 528 U.S. at 477. The inquiry requires that we first ask whether the trial counsel's performance fell below the reasonably accepted professional standard. Put another way, we must assess whether "counsel's performance was constitutionally deficient such that he was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Magana v. Hofbauer*, 263 F.3d 542, 547 (6th Cir. 2001). In assessing the attorney's conduct under *Strickland*'s first prong, the Supreme Court instructed that "courts must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct,' and 'judicial scrutiny of counsel's performance must be highly deferential.'" *Roe*, 528 U.S. at 477 (citations omitted). The second component of the *Strickland* inquiry requires us to determine whether the "counsel's deficient performance prejudiced the defendant." *Id.* To establish this prejudice, the petitioner must "demonstrat[e] that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Magana*, 263 F.3d at 547 (quoting *Strickland*, 466 U.S. at 694).

Before the *Roe* Court addressed the precise question raised in that case, whether "counsel [is] deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other," the Court reiterated its prior

decisions rebuking attorneys for failing to file appeals after clients so specifically instructed. *Roe*, 528 U.S. at 477. The Court referred to its decision in *Rodriquez v. United States*, 395 U.S. 327 (1969), stating that it is "professionally unreasonable" for a lawyer to fail to file an appeal when specifically instructed to do so. *Roe*, 528 U.S. at 477; *see also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (holding that counsel's failure to perfect a direct appeal upon his client's request is a per se Sixth Amendment violation). The result, in such a situation, is that a defendant is entitled to a delayed appeal and need not show any likelihood of success on its merits. *See Roe*, 528 U.S. at 477.

Nevertheless, the *Roe* Court rejected a per se rule that an attorney must always file an appeal unless specifically told otherwise, and determined that when the client has neither told his attorney to file an appeal nor told her not to file an appeal, courts must evaluate the attorney's performance by asking whether the attorney "consulted" with the defendant about the benefits and drawbacks of bringing an appeal. *Id.* at 478. Consultation occurs when the attorney "advis[es] the defendant about the advantages and disadvantages of taking an appeal, and mak[es] a reasonable effort to discover the defendant's wishes." *Id.* If consultation has occurred, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's *express instructions* with respect to an appeal." *Id.* (emphasis added). If, on the other hand, the counsel failed to consult with her client, then the court must address whether the failure to consult, by itself, is indicative of deficient performance. *See id.*

In this present appeal, Regalado does not contend that she specifically directed Yzaguirre to file an appeal,[3] or argue that

---

[3] Although Regalado's own testimony expresses her opinion that she instructed Yzaguirre to file an appeal, the arguments in her brief suggest that she expressed her "desire" or "wishes" to file an appeal. The briefs suggest that Yzaguirre should be judged ineffective because he knew of her "desires" or "wishes" to appeal but pursued an alternative form of relief.

she was denied a consultation with her lawyer regarding an appeal. Instead, Regalado insists that Yzaguirre provided her with a meaningless consultation because he neglected to file an appeal even after she had expressed her desire that one be filed. But although Regalado expressed her desire to file an appeal, she did not specifically instruct Yzaguirre to do so. *See Roe*, 528 U.S. at 477 (citing *Rodriquez*, 395 U.S. at 328). Therefore, we are not faced with the analysis of whether "[c]ounsel perform[ed] in a professionally unreasonable manner . . . by failing to follow the defendant's *express instructions* with respect to an appeal," *id.* at 478 (emphasis added), because Regalado does not assert that she gave Yzaguirre express instructions to file an appeal or that he failed to consult her on the benefits and drawbacks of appeal. Rather, at issue is whether Yzaguirre's performance was deficient because he knew that Regalado wanted to appeal but he nonetheless decided that pursuit of Rule 35(b) relief was the best alternative.

The district court found Yzaguirre's testimony credible that Regalado never instructed him to file an appeal and that Regalado agreed to proceed only on obtaining relief under Rule 35(b). The magistrate judge's report did not credit Regalado's testimony and instead determined that after consultation, Regalado never "explicitly direct[ed]" her attorney to file an appeal. J.A. at 84 (Report and Recommendation). The magistrate judge relied on the fact that Regalado "acquiesced" in Yzaguirre's decision to pursue a Rule 35(b) reduction in sentence.[4] J.A. at 81 (Report and Recommendation). In addition, the magistrate judge credited Yzaguirre's legitimate fear that after obtaining a sentence reduction from the district judge of fifteen years under the Sentencing Guidelines, an appeal actually might have resulted in a longer sentence. The magistrate judge further reasoned that Yzaguirre might have determined that filing both an appeal and pursuing Rule 35(b) relief simultaneously would

---

[4] It appears that Regalado wrote a letter to the federal prosecutor in support of a Rule 35(b) motion. J.A. at 81 (Report and Recommendation).

be inconsistent, given that Rule 35(b) permits sentencing reductions upon the government's motion based on cooperation with the government. Thus, the magistrate judge reasoned that Regalado failed to meet the first prong of the *Strickland* test — that her attorney's performance was deficient. As stated previously, the district court accepted the magistrate judge's report and recommendation, specifically noting that Regalado acceded to Yzaguirre's advice not to appeal.

We must affirm the district court's decision because the district court interpreted the evidence in a manner consistent with the record. *Wright*, 182 F.3d at 463. Specifically, the magistrate judge, whose findings were adopted by the district court, determined that Regalado had failed to direct Yzaguirre to file an appeal. Even if we were to give more credit to Yzaguirre's testimony that Regalado may have been confused and expected an appeal, the result would remain unchanged. "[T]he court of appeals may not reverse . . . even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574. The district court's decision to credit Yzaguirre's testimony that he never received an express instruction to file an appeal defeats Regalado's ineffective assistance of counsel claim at the first prong of the *Strickland* analysis. Because Regalado failed to satisfy the first prong, we need not reach the issue of whether she was prejudiced.

### C. *Apprendi* Violation

Before the magistrate judge, Regalado asserted that because her indictment failed to allege a specific quantity of marijuana the district court could not sentence her beyond the default statutory-maximum sentence without violating her constitutional rights under *Apprendi*. Regalado insisted that under a *Teague v. Lane*, 489 U.S. 288 (1989), analysis, *Apprendi* did not announce a new rule but rather further developed the rule from *Jones v. United States*, 526 U.S. 227

(1999), such that *Teague* did not bar *Apprendi*'s retroactive application to her case. On this appeal, Regalado refined her *Apprendi* argument to allege that the district court did not have jurisdiction over her.[5] Regalado argues that because she was never charged with an aggravated offense, the district court did not have jurisdiction to sentence her above the default statutory-maximum sentence.[6]

Our resolution of Regalado's *Apprendi* claim turns on whether *Apprendi* has retroactive applicability to cases on collateral review. After the briefs were filed in this case, we published an opinion, in agreement with four other circuits,[7] holding that "*Apprendi* is not retroactively applicable to initial § 2255 motions, because *Apprendi* does not create a new 'watershed rule' that improves the accuracy of determining the guilt or innocence of a defendant." *Goode v. United States*, 305 F.3d 378, 382 (6th Cir. 2002). The court began

---

[5]The government argues that Regalado waived this particular *Apprendi* argument by failing to raise it below. We need not consider the waiver argument because it is clear that Regalado is not entitled to any relief under *Apprendi*. As the forthcoming discussion will show, this court held in *Goode v. United States*, 305 F.3d 378 (6th Cir. 2002), that *Apprendi* is not retroactively applicable on collateral review. *Id.* at 382.

[6]Shortly after the briefs in this case were filed, the Supreme Court provided the answer to Regalado's newest *Apprendi* argument that failure to include drug quantity in the indictment deprived the district court of jurisdiction. *See United States v. Cotton*, 535 U.S. 625, 631 (2002). In *Cotton*, the Court determined that a defect in the indictment does not deprive the court of jurisdiction. *Id.*

[7]The Fourth, Eighth, Ninth, and Eleventh Circuits have all decided against retroactive application of *Apprendi* in collateral proceedings. *See United States v. Sanders*, 247 F.3d 139 (4th Cir.), *cert. denied*, 534 U.S. 1032 (2001); *United States v. Moss*, 252 F.3d 993 (8th Cir. 2001), *cert. denied*, 534 U.S. 1097 (2002); *Jones v. Smith*, 231 F.3d 1227 (9th Cir. 2000); *McCoy v. United States*, 266 F.3d 1245 (11th Cir. 2001), *cert. denied*, 536 U.S. 906 (2002).

with a *Teague* analysis[8] for retroactive application of new criminal procedure rules and determined that *Apprendi* did not fall within the first exception of *Teague*;[9] if *Apprendi* were to apply at all, it must fall under the second *Teague* exception — a watershed rule of criminal procedure. *Goode*, 305 F.3d at 384 n.8.

The *Goode* court first determined that *Apprendi* established a new rule because "the result of *Apprendi* was not controlled by any 'precedent existing at the time the defendant's conviction became final.'" *Goode*, 305 F.3d at 385 (quoting *Teague*, 489 U.S. at 301). However, the court concluded that *Apprendi*'s new rule did not "improve the bedrock procedural elements essential to the fairness of a proceeding" because it merely improves accuracy in the "imposition of a proper sentence" and not in the determination of guilt versus innocence, and therefore, was not the watershed rule envisioned by the Supreme Court in *Teague*. *Goode*, 305 F.3d at 385 (quotations omitted). Thus, the *Goode* panel's

---

[8]In *Teague*, the Supreme Court held that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310. The *Teague* inquiry consists of three steps: (1) establishing the date that the defendant's conviction was final; (2) determining whether a court, at the time the defendant's conviction is final, would have felt compelled to hold that the rule the defendant now seeks to use was then required by the Constitution; and if the rule is new (3) assessing whether the new rule falls within one of the two narrow *Teague* exceptions. *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994). The exceptions permit the retroactive application of a new rule of law when the new rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," *Teague*, 489 U.S. at 311 (quotation omitted), or when it involves "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Graham v. Collins*, 506 U.S. 461, 478 (1993) (quotation omitted).

[9]The first exception was irrelevant in *Goode* because *Apprendi* did not make drug conspiracies "beyond the power of the criminal law-making authority to proscribe." *Teague*, 489 U.S. at 311.

analysis and conclusion that *Apprendi* cannot be applied retroactively on collateral review directly negates Regalado's argument that *Apprendi* was not a new rule but merely reiterated what was already an existing rule from *Jones*. As a result, Regalado's argument must fail because a previous Sixth Circuit decision specifically rejects her attempt to use *Apprendi* retroactively on collateral review.

Moreover, even if Regalado were entitled to bring her *Apprendi* claim, she nonetheless would need to show cause and prejudice as to why she did not pursue this claim in the district court or on direct appeal. Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process. *United States v. Frady*, 456 U.S. 152, 167-68 (1982). The Supreme Court consistently has determined that "to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Id.* at 166. In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). "The *Frady* cause and prejudice standard applies to a defendant who pleads guilty and first asserts a claim for relief in a collateral proceeding." *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th Cir. 1993).

Assuming that Regalado could satisfy the cause requirement, we conclude that the prejudice hurdle nonetheless remains insurmountable when Regalado admitted to involvement with nearly 500 pounds of marijuana. We decided in *United States v. Harper*, 246 F.3d 520 (6th Cir. 2001), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002), that a defendant who stipulated to a specific quantity of drugs in a plea could not use *Apprendi* to challenge that the determination was made by a preponderance of the evidence. *Harper*, 246 F.3d at 530. Similarly, at her plea hearing, Regalado admitted to

an amount commensurate with her sentence. Both the magistrate and district judges agreed that Regalado's *Apprendi* claim failed because she admitted to distributing nearly 500 pounds of marijuana. Because Regalado has not contested the voluntariness of her previous admissions, her sentence still remains within the permissible range for the drugs that she admitted to handling and thus she would be unable to show the prejudice necessary to obtain relief under § 2255. *See Harper*, 246 F.3d at 529.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of Regalado's motion for relief pursuant to 28 U.S.C. § 2255.