**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0350n.06

No. 10-1094

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Apr 02, 2012*

LEONARD GREEN, Clerk

ALONZO W. BATES,

    Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE: GIBBONS, GRIFFIN, and DONALD, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner Alonzo W. Bates appeals the district court's dismissal of his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, we affirm.

I.

In March 2006, a federal grand jury returned a superseding indictment charging Bates with four counts of mail fraud, 18 U.S.C. § 1341; four counts of theft from a program receiving federal funds, 18 U.S.C. § 666; one count of extortion, 18 U.S.C. § 1951; one count of bank fraud, 18 U.S.C. § 1344; and four counts of failure to file a tax return, 26 U.S.C. § 7203. On the first day of trial, Bates pleaded guilty to all four counts of failure to file a tax return, and the government dismissed the mail fraud counts. Thereafter, a jury was unable to reach a verdict on the extortion count, but

found Bates guilty on all other remaining charges. Bates's convictions were affirmed on direct appeal. *United States v. Bates*, 363 F. App'x 369 (6th Cir. 2010).

While Bates's appeal was pending before this court, he filed a motion to vacate, set aside, or correct his sentence, alleging ineffective assistance of counsel, Fifth and Sixth Amendment violations, and violation of the Jury Selection and Service Act ("JSSA"), 28 U.S.C. § 1861. Specifically, Bates claimed that the jury selection procedures in the Eastern District of Michigan resulted in unrepresentative jury venires, excluding the African-American population to a statistically significant degree. Bates later withdrew his ineffective assistance claim.

Following an initial hearing, the district court dismissed Bates's Fifth Amendment and JSSA claims.[1] With regard to the alleged Sixth Amendment violation, the district court noted that Bates had failed to assert this claim at trial, requiring a finding of cause and prejudice to excuse the procedural default. The district court thereafter ordered an evidentiary hearing.

On November 12, 2009, the district court heard detailed testimony relating to the jury selection procedures in the Eastern District of Michigan. *See United States v. Bates*, No. 05-81027, 2009 WL 5033928, at *2-8 (E.D. Mich. Dec. 15, 2009). Thereafter, the Honorable Victoria A. Roberts dismissed Bates's petition, ruling that he failed to prove the prejudice necessary to excuse his defaulted Sixth Amendment claim because he had not shown a "systematic exclusion" of African-Americans from the jury pools. This timely appeal followed.

---

[1]These claims are not before us. *See Valentine v. Francis*, 270 F.3d 1032, 1035 (6th Cir. 2001) (noting that issues not included in the certificate of appealability are not before the court); Fed. R. App. P. 22(b).

II.

"To warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on . . . the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). In reviewing the denial of a 28 U.S.C. § 2255 petition, we apply "'a *de novo* standard of review of the legal issues and will uphold the factual findings of the district court unless they are clearly erroneous.'" *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001) (quoting *Hilliard v. United States*, 157 F.3d 444, 447 (6th Cir. 1998)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Griffin*, 330 F.3d at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

In this case, Bates asserts that his grand and petit juries were not drawn from a fair cross-section of his community, in violation of the Sixth Amendment. This issue, however, was not raised before the district court as required by Federal Rule of Criminal Procedure 12(b)(3). *Reed v. Ross*, 468 U.S. 1, 12 n.8 (1984); *United States v. Boulding*, 412 F. App'x 798, 802 (6th Cir. 2011). Because of this procedural default, to obtain collateral review, Bates must clear a significantly higher hurdle than would exist on direct appeal. He must demonstrate "good cause" for his failure to raise the claim and prejudice if unable to proceed, or he must demonstrate actual innocence. *Regalado v. United States,* 334 F.3d 520, 528 (6th Cir. 2003). Bates argues that he has demonstrated cause and

prejudice to excuse his procedural default. On this record, we conclude that Bates has failed to sustain his evidentiary burden of proving both cause and prejudice.

III.

The Supreme Court "has not given the term 'cause' precise content." *Reed*, 468 U.S. at 13. This is because of the "broad range of potential reasons for an attorney's failure to comply with a procedural rule, and the virtually limitless array of contexts in which a procedural default can occur[.]" *Id.* "Underlying the concept of cause, however, is at least the dual notion that, absent exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel, and that defense counsel may not flout state procedures and then turn around and seek refuge in federal court from the consequences of such conduct." *Id.* (internal citations omitted). "On the other hand, the cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests." *Id.* at 14. Therefore, "the failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the [cause] requirement is met." *Id.*

Bates argues that the factual basis underlying his Sixth Amendment claim was "reasonably unknown" to his counsel because the 2004-2006 Qualified Wheel was not publicly available at the time of Bates's trial and the Eastern District's jury selection procedures were race neutral on their face. "[C]ounsel's ignorance or inadvertence," however, does not constitute cause. *Murray v. Carrier*, 477 U.S. 478, 487 (1986). Rather, for cause to exist, an "*external impediment*, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must

have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (emphasis added); *see also United States v. Blair*, 214 F.3d 690, 699-70 (6th Cir. 2000).

In this case, there was no "external impediment" preventing Bates from discovering the factual basis of his Sixth Amendment claim. In the Eastern District of Michigan, several defendants have made successful motions to obtain non-public jury selection records, for good cause shown. *See, e.g.*, *United States v. O'Reilly*, No. 05-CR-80025, 2008 WL 4960173, at *2 (E.D. Mich. Nov. 20, 2008) (noting that defendant was granted access to the then-current Master and Qualified Wheels); *United States v. Fieger*, No. 07-20414, 2008 WL 1902054, at *7 (E.D. Mich. Apr. 29, 2008); *United States v. Montini*, No. 03-80228, 2003 WL 22283892, at *7 (E.D. Mich. Sept. 3, 2003); *United States v. Brown*, 128 F. Supp. 2d 1034, 1035-36 (E.D. Mich. 2001). Accordingly, a reasonable investigatory effort could have allowed Bates to present his Sixth Amendment challenge to the district court. *See Engle v. Isaac*, 456 U.S. 107, 134 (1982) ("Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default."). Moreover, while Bates asserts that he was unaware of a possible Sixth Amendment challenge, the Eastern District's well-known history regarding fair cross-section claims undermines this assertion. *See generally United States v. Ovalle,* 136 F.3d 1092 (6th Cir. 1998); *United States v. Greene*, 971 F. Supp. 1117, 1121-24 (E.D. Mich. 1997) (describing historical evolution of the Eastern District's jury selection procedures).

Bates claims that he had no basis upon which to obtain non-public jury wheel information at the time of his trial. This assertion, however, is not factually supported. Noticeably absent from the record, for example, is any information regarding the composition of Bates's petit jury or petit jury venire. In *Fieger*, the defendant was able to obtain non-public information based upon the racial composition of his petit jury venire. 2008 WL 1902054, at *1. Because it is Bates's burden to show cause, *Regalado,* 334 F.3d at 528, we will not assume that he had no basis upon which to obtain jury-wheel information when the record simply does not speak to the issue.

Furthermore, most relevant to our inquiry is the fact that Bates did not even *attempt* to obtain this information. *Engle*, 456 U.S. at 130 ("[T]he futility of presenting an objection . . . cannot alone constitute cause for a failure to object at trial."). The fact that the jury selection plan was race neutral on its face did require Bates to put forth additional time and effort to present a Sixth Amendment claim. Nevertheless, the procedures were available for Bates to obtain the information he needed. And, other defendants were following these procedures with some success. *McCleskey*, 499 U.S. at 498 ("[T]he question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter[.]"); *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 362-63 (1963) (holding that cause was not established, despite the fact that the underlying "illegality [was] not readily noticeable by the litigants or their counsel," when facts concerning the jury selection process were available upon due diligence). Accordingly, because the factual basis underlying Bates's Sixth Amendment claim was available upon a

"reasonable investigation," *McCleskey*, 499 U.S. at 498, Bates has not established cause to excuse his procedural default.

IV.

A petitioner must "show cause and prejudice" to excuse a procedural default, *Regalado*, 334 F. 3d at 528. Here, Bates has done neither.

A criminal defendant has the right, under the Sixth Amendment, "to a petit jury selected from a fair cross section of the community." *Duren v. Missouri*, 439 U.S. 357, 359 (1979); *see also Taylor v Louisiana*, 419 U.S. 522, 530 (1975). In order to establish a prima facie violation of this right, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community;
> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren*, 439 U.S. at 364. In this case, while the statistical evidence indicates that African-Americans have been consistently underrepresented in Eastern District of Michigan jury venires, Bates has supplied no evidence that this underrepresentation is the result of a "systematic exclusion."

As his primary argument before this court, Bates asserts that the disparity between the number of African-Americans in the community and the number of African-Americans on the Qualified Wheel is so large and continuous as to demonstrate a systematic exclusion, despite the fact that such disparity cannot be explained. We disagree. Generally speaking, a long-standing statistical disparity is not enough to establish systematic exclusion. "If underrepresentation by itself were

sufficient to support a holding of unconstitutionality, the second and third prong of *Duren* would effectively collapse into one inquiry." *Randolph v. California*, 380 F.3d 1133, 1141 (9th Cir. 2004).

Bates cites language from *Duren* to support his argument that a long-standing statistical discrepancy is enough to establish a systematic exclusion. 439 U.S. at 366 ("[T]hat a large discrepancy occurred not just occasionally but in every weekly venire for a period of nearly a year manifestly indicates that the cause of the underrepresentation was systematic-that is, inherent in the particular jury-selection process utilized."). Indeed, an extreme underrepresentation may be enough to establish a *per se* systematic exclusion. *See United States v. Test*, 550 F.2d 577, 586 (10th Cir. 1976) ("[P]roof that a cognizable group had been totally excluded from jury service over a substantial period of time or had received only 'token representation' has been held sufficient to raise an inference of discrimination and systematic exclusion."); *see also United States v. Rioux*, 97 F.3d 648, 658 (2d Cir. 1996) ("[I]t remains unclear whether statistics alone can prove systematic exclusion."). In fact, this court intimated as much in *Smith v. Berghuis*. 543 F.3d 326, 340 (6th Cir. 2008) (reversed on other grounds, *Berghuis v. Smith*, 130 S. Ct. 1382 (2010)). In *Berghuis*, however, the 15-18% disparity at issue was held to be insufficient to establish a *per se* systematic exclusion. *Id.* This holding precludes Bates's claim, because the racial disparity in this case – 13% – is less than that in *Berghuis*. *See also Test*, 550 F.2d at 587 (noting that "a disparity of as much as 16%" was not enough to establish a *per se* systematic exclusion).

In the absence of a *per se* systematic exclusion, a defendant must establish that the challenged disparity is "inherent" in the jury selection process itself. *United States v. Allen*, 160 F.3d 1096,

1104 (6th Cir. 1998); *see also United States v. Craft*, 165 F.3d 28, 1998 WL 702348, at *3 (6th Cir. 1998) (Table) ("[A finding of systematic exclusion] would require evidence that a racially unbalanced jury pool was more than mere happenstance and in fact resulted from the very methods employed to select the jurors used to decide federal cases in the district."). In *Berghuis*, for example, we found a systematic exclusion when a jury selection process provided "opt out" procedures resulting in the consistent underrepresentation of African-Americans. 543 F.3d at 340-41. Because the jury selection procedures expressly provided the problematic "opt out" options, the resulting disparity was held to be the result of a systematic exclusion.[2]

Here, there is simply nothing in the record indicating that the racial disparity at issue was caused by the Eastern District's jury selection procedures. Dr. Thomson, Bates's statistical expert, was unable to identify what caused the underrepresentation of African-Americans in the 2004-2006 Qualified Wheel. While Bates notes that numerous jury questionnaires were delivered outside of the Detroit Division or were sent to persons now deceased, there is no evidence that these issues had a disproportionate effect on potential African-American jurors. And, speculation that an issue might contribute to the underrepresentation of African-Americans is not enough to establish a prima facie Sixth Amendment violation. *See Berghuis*, 130 S. Ct. at 1395 ("No 'clearly established' precedent of this Court supports Smith's claim that he can make out a prima facie case merely by pointing to a host of factors that, individually or in combination, *might* contribute to a group's

---

[2]*Berghuis* was thereafter reversed by the Supreme Court, which held that the defendant had not adequately demonstrated that the opt-out procedures *actually caused* the underrepresentation at issue. *Berghuis v. Smith*, 130 S. Ct. 1382, 1395 (2010).

underrepresentation."). The same is true for "undeliverable" questionnaires. There is no evidence that undeliverable questionnaires affected African-Americans to a greater degree than any other community. Indeed, the statistics indicate that Wayne County, which is home to the majority of African-Americans in the Detroit Division, had only a slightly higher than average undeliverable rate.

The only evidence in the record establishing a possible cause for the underrepresentation of African-Americans is the non-response rate in Wayne County, which is more than double that of any other county. Non-responses, however, are not a problem "inherent" to the jury selection procedures, but are the result of individual choice. *See United States v. Cecil*, 836 F.2d 1431, 1447 (4th Cir. 1988) (noting that disparities attributable to "personal predilection" cannot form the basis of a fair cross-section claim). Indeed, we have previously noted that non-responses, and a court's failure to put forth additional effort to obtain responses, are not generally considered a "systematic exclusion." *Berghuis*, 543 F.3d at 341 n.5 ("Courts, however, have been relatively uniform in finding that the failure to send additional letters to individuals who did not [] respond to questionnaires was not 'systematic exclusion' within the meaning of *Duren*.") (citing cases); *Craft*, 1998 WL 702348, at *3 (holding that the failure to respond to a jury summons is not a systematic defect in a jury selection plan, but a "private sector influence"). In fact, every court to address the issue has held that non-responses do not constitute a "systematic exclusion." *See United States v. Orange*, 447 F.3d 792, 800 (10th Cir. 2006) ("Discrepancies resulting from the private choices of potential jurors do not represent the kind of constitutional infirmity contemplated by *Duren*."); *United States v. Murphy*,

No. 94 CR 794, 1996 WL 341444, at *5 (N.D. Ill. June 18, 1996) ("The jury selection system . . . is not excluding African-Americans as a group, but many African-American individuals are excluding themselves by not responding to jury questionnaires."); *United States v. Ortiz*, 897 F. Supp. 199, 205 (E.D. Pa. 1995).[3]  Accordingly, because Bates has failed to present evidence of a "systematic exclusion," he has not shown prejudice.

V.

For these reasons, we affirm the order of the district court.

---

[3]*See also Rioux,* 97 F.3d at 658 ("The inability to serve juror questionnaires because they were returned as undeliverable is not due to the system itself, but to outside forces, such as demographic changes."); *Cecil*, 836 F.2d at 1448 ("[T]here is no violation of the jury cross-section requirement where there is merely underrepresentation of a cognizable class by reason of failure to register [to vote], when that right is fully open.").