**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0139n.06

**No. 09-4582**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| DON S. MCAULIFFE, | ) | |
| | ) | **FILED** |
| Petitioner – Appellant, | ) | *Feb 07, 2013* |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED STATES OF AMERICA, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Respondent – Appellee. | ) | OPINION |

Before:  COOK and STRANCH, Circuit Judges; and LAWSON, District Judge.[*]

**JANE B. STRANCH, Circuit Judge**.  Petitioner Don McAuliffe was convicted of several

federal mail fraud and money laundering offenses for burning down his house and seeking the

insurance proceeds.  After losing his direct appeal, McAuliffe filed a motion to vacate, set aside, or

correct his sentence under 28 U.S.C. § 2255 alleging a violation of the Speedy Trial Act, multiple

instances of ineffective assistance of counsel, and defective jury instructions.  Finding no error in

the district court's denial of his motion, we **AFFIRM**.

**I.  BACKGROUND**

We summarized the facts of this case in McAuliffe's direct appeal as follows:

> On March 8, 2002, a fire destroyed the Millersport, Ohio, lakeside residence
> of defendant-appellant Don S. McAuliffe, a duly-elected sitting judge of the Fairfield
> County Municipal Court, Lancaster, Ohio.  At the time of the fire, defendant was
> vacationing in the Virgin Islands.  Defendant twice sent verified proof of loss claim

---

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of
Michigan, sitting by designation.

forms to his insurer, Grange Mutual Casualty Company ("Grange"), via United States mail, representing in the forms that "the cause and origin of the said loss were: UNKNOWN TO CLAIMANT." Defendant eventually settled his claim for $235,000. He used the insurance proceeds to pay off the mortgage on the destroyed property and a car loan, and to make a down payment on another parcel of real estate. Federal, state, and local authorities, however, became suspicious that the fire had been purposefully set by defendant and a business partner, Darrell Faller, as part of a scheme to defraud the insurance company.

*United States v. McAuliffe*, 490 F.3d 526, 529–30 (6th Cir. 2007).

The business relationship between defendant and Faller . . . soured [when McAuliffe filed a lawsuit against Faller due to differences regarding their joint demolition and excavation venture, "Judge-R-Work"], and Faller contacted an attorney, who in turn contacted an agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF"). In exchange for his cooperation, Faller was granted immunity from prosecution. He described to authorities his role and defendant's involvement in the planning and execution of the fire for the purpose of obtaining insurance proceeds. Over the next two months, authorities recorded several conversations between defendant and Faller or [McAuliffe's former girlfriend, Beth] Westminster.

*Id.* at 538–39.

On April 23, 2003, following an investigation into the matter, a federal grand jury in the Southern District of Ohio indicted defendant on charges of mail fraud, in violation of 18 U.S.C. § 1341 (Counts One and Two); using fire to commit mail fraud, in violation of 18 U.S.C. § 844(h)(1) (Count Three); conspiring to use fire to commit mail fraud, contrary to 18 U.S.C. § 844(m) (Count Four); and money-laundering, in violation of 18 U.S.C. § 1957 (Counts Five and Six). The indictment sought forfeiture of the insurance proceeds, as well as the real and personal property acquired with those proceeds.

Following a nearly three-week jury trial, defendant was convicted as charged on all counts. [After his first sentence was vacated in light of *United States v. Booker*, 543 U.S. 220 (2005), McAuliffe] was re-sentenced to a total of 156 months of imprisonment: concurrent sentences of 36 months on Counts One, Two, Four, Five, and Six, and a consecutive sentence of 120 months on Count Three. A final order of forfeiture was entered by the court. The amended judgment of conviction and sentence was entered on December 20, 2005, the same date on which defendant filed the present appeal.

*Id.* at 530 (footnotes omitted).

> . . . [T]here was ample evidence on which to convict defendant. At trial, Faller testified as a witness for the government that he and defendant conspired to burn down defendant's house so that defendant could obtain the insurance proceeds and use the proceeds to demolish the house and rebuild it. They arranged for defendant to be out of town when Faller started the fire. Defendant's former girlfriend, Beth Westminster, also testified as a government witness, corroborating that Faller and defendant conspired to burn down the house with the ultimate purpose of rebuilding it. In their first attempt, defendant and Faller tried to rupture a gas line in the house; however, this attempt failed. Faller testified that he and defendant then made a second attempt to burn down the residence by placing a halogen lamp against a wall that they believed would ignite. This attempt was successful and, during the early morning hours of March 8, 2002, the house caught fire.

*Id.* at 537–38.

In April 2008, McAuliffe filed a pro se § 2255 motion. The district court denied the motion and also denied a certificate of appealability ("COA"). This court issued a COA and directed the clerk to appoint counsel. *McAuliffe v. United States*, No. 09-4582 (6th Cir. Mar. 22, 2011).

The appellate brief submitted by McAuliffe's appointed counsel raises several claims: (1) McAuliffe was deprived of his rights under the Speedy Trial Act; (2) his attorneys were ineffective by failing to (a) disclose his expert's experiment to the prosecution before trial, resulting in its exclusion, (b) listen to the entirety of a taped conversation between Faller and defense witness Ray Hommon,[1] and (c) move to suppress a taped conversation between McAuliffe and Faller because it occurred during a settlement conference; and (3) the jury was improperly instructed as to the requisite intent element for a violation of 18 U.S.C. § 844(h). McAuliffe submitted independent

---

[1]This name also appears in the record and briefs as "Holmon" and "Holman," but the trial transcript reflects that he spelled his name "H-o-m-m-o-n."

pro se appellate principal and reply briefs raising additional issues, but this court issued orders

denying filing of these briefs because McAuliffe is represented on appeal.[2]

## II. DISCUSSION

### A. Speedy Trial Act

McAuliffe first argues his conviction must be vacated because of a Speedy Trial Act

violation. Under the Speedy Trial Act, a defendant's trial must commence within seventy days after

the date on which the indictment was filed or the date the defendant appeared before a judicial

officer of the court in which the charge is pending, whichever is later. 18 U.S.C. § 3161(c)(1)

(2003). Periods of delay may be excluded from the seventy-day calculation for various reasons,

including periods stemming from a continuance (provided that the court makes a finding that the

"ends of justice" served by granting a continuance outweighs the best interest of the public and the

defendant in a speedy trial), 18 U.S.C. § 3161(h)(8)(A) (2003), and periods during which pretrial

motions are under advisement by the court, *id.* § 3161(h)(1)(F) & (J). If a defendant is not brought

to trial within seventy non-excludable days, the "indictment shall be dismissed on motion of the

defendant." 18 U.S.C. § 3162(a)(2) (2003). This dismissal may be either with or without prejudice

depending on the court's consideration of three non-exclusive factors: "[1] the seriousness of the

offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact

---

[2]For convenience, we refer to arguments made by McAuliffe's appellate counsel as if
McAuliffe had made them himself.

of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." *Id.*

By McAuliffe's count, more than seventy non-excludable days elapsed before his trial began resulting in a violation of the Speedy Trial Act. The statute, however, "assigns the role of spotting violations of the Act to defendants," *Zedner v. United States*, 547 U.S. 489, 502 (2006) (citing 18 U.S.C. § 3162(a)(2)), and McAuliffe forfeited "his Speedy Trial Act claim by failing to raise it before his trial began." *United States v. Stewart*, 628 F.3d 246, 253 (6th Cir. 2010). He also did not raise the issue on direct appeal.

McAuliffe asserts that he can show cause and prejudice to excuse his procedural default of this claim because his trial and appellate counsel rendered ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), by failing to raise the claim. *See Regalado v. United States*, 334 F.3d 520, 527–28 (6th Cir. 2003) (holding that movant under § 2255 must show cause and prejudice for failure to raise a claim in the district court or on direct appeal) (citing *United States v. Frady*, 456 U.S. 152, 166–68 (1982), and *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Even if we assume without deciding that McAuliffe can attribute cause for his procedural default to the deficient performance of his trial and appellate counsel, McAuliffe has not demonstrated prejudice. *See Regalado*, 334 F.3d at 528.

He relies on *Barker v. Wingo*, 407 U.S. 514, 532 (1982), to argue that the right to a speedy trial is designed to prevent oppressive pretrial detention; minimize anxiety and concern of the defendant; and limit the possibility that the defense will be impaired. He states that his pretrial

detention caused him to lose his job and hindered his ability to gather evidence, contact witnesses, or otherwise prepare his defense.

The concerns McAuliffe identifies are relevant to whether a defendant suffered a violation of his *constitutional* right to a speedy trial under the Sixth Amendment. *See United States v. Young*, 657 F.3d 408, 418 (6th Cir. 2011) (citing *Barker*, 407 U.S. at 532). Here we are concerned with McAuliffe's *statutory* right to a speedy trial. To demonstrate prejudice resulting from counsel's failure to raise a Speedy Trial Act claim, McAuliffe must show under *Strickland* that but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Campbell v. United States*, 364 F.3d 727, 730–31 (6th Cir. 2004) (applying *Strickland* to a claim that counsel performed deficiently by failing to raise a Speedy Trial Act claim).

McAuliffe has not demonstrated that, but for his trial and appellate attorneys' unprofessional errors, the district court or this court on direct appeal would have ordered dismissal of the prosecution with prejudice based on a Speedy Trial Act violation, thereby changing the result of the proceeding. In deciding to dismiss a prosecution with or without prejudice for a Speedy Trial Act violation, a court considers several factors, including the party responsible for the delay. *See Bloate v. United States*, 130 S. Ct. 1345, 1358 (2010). The record reflects that the district court granted the "ends of justice" continuances at McAuliffe's request. Even if the district court violated other portions of the Speedy Trial Act (and we do not so find), McAuliffe has not persuaded us that his case would have been dismissed with prejudice instead of without prejudice. He has not even argued that—taking into consideration the seriousness of the offense, the facts and circumstances of the case

leading to dismissal, and the impact of a re-prosecution on the administration of the Speedy Trial Act and on the administration of justice—his case would require dismissal with prejudice. *See* § 3162(a). Because McAuliffe has not shown prejudice, his procedural default is not excused, and relief on this ground is denied.

## B. Ineffective Assistance of Counsel

McAuliffe contends that his trial counsel rendered ineffective assistance in three other ways. In order to succeed on any of these three ineffective assistance claims, McAuliffe "must show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Deficient performance by counsel is "measured against an objective standard of reasonableness, under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (citations and internal quotation marks omitted). "While there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Sowell v. Anderson*, 663 F.3d 783, 791 (6th Cir. 2011) (citations and internal quotation marks omitted). To demonstrate prejudice, as we stated previously, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011) (citing *Strickland*, 466 U.S. at 693).

### 1. Failure to Disclose Expert Experiment

McAuliffe argues that his trial attorneys were ineffective by failing to disclose to the prosecution a fire experiment conducted by the defense expert. *See* Fed. R. Crim. P. 16(b)(1)(B).[3] During the expert's experiment, a halogen lamp failed to ignite a fire in the manner proposed by the prosecution. As a result of counsel's noncompliance with the rule, the court excluded McAuliffe from presenting that evidence to the jury. *See* Fed. R. Crim. P. 16(d)(2)(C).

There is no dispute that McAuliffe's attorneys were deficient in failing to file the required notice. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 355 (6th Cir. 2006) ("An objectively reasonable attorney would have complied with Michigan law in providing the correct alibi notice."). There can also be little doubt that a trial attorney's deficiencies when attempting to mount a scientific defense to a closely-contested arson accusation may prejudice a defendant by undermining confidence in the reliability of the verdict. *See Richey v. Bradshaw*, 498 F.3d 344, 364 (6th Cir. 2007). However, we agree with the Government that McAuliffe was not prejudiced by the exclusion of his expert's lamp experiment because of the combination of two factors. First, McAuliffe's expert testified extensively about other scientific evidence supporting his conclusion that the halogen lamp did not start the fire. Second, and more significantly, the jury learned that an experiment conducted by the Government's own expert failed to produce a flame with a halogen lamp under simulated conditions. Although

---

[3]Our review of the record suggests that this issue was not presented to the district court or raised in McAuliffe's COA application. Although we would normally decline to review this issue under such circumstances, *see Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 752-53 (6th Cir. 2011), the Government has forfeited any waiver argument, *see United States v. Boudreau*, 564 F.3d 431, 435 (6th Cir. 2009).

McAuliffe's own expert's experiment might have been helpful in providing yet more evidence that the lamp did not start the fire, such evidence would have been cumulative and thus cannot satisfy the prejudice standard necessary to succeed on a claim of ineffective assistance of counsel. *See White v. Mitchell*, 431 F.3d 517, 530 (6th Cir. 2005).

### 2. Failure to Listen to Faller/Hommon Tape

McAuliffe next asserts that his trial attorneys were ineffective because they did not listen to an entire tape recording that purported to be a conversation between Darrell Faller (McAuliffe's former business partner, arson accomplice, and prosecution witness) and Ray Hommon (an acquaintance of McAuliffe and Faller and a defense witness). The prosecution played a portion of the tape in an attempt to impeach Hommon during his cross-examination. Hommon immediately denied that the voice on the tape was his. Under these circumstances, defense counsel made a strategic decision not to press Hommon to admit that his voice was on the tape, thereby impeaching his own witness in front of the jury. Although the court gave defense counsel an opportunity to listen to the entire tape, it appears that counsel may not have done so. McAuliffe suggests that the tape may have contained exculpatory or impeaching material.

Even assuming McAuliffe could establish that counsel's failure to investigate the tape amounted to deficient performance, *see Strickland*, 466 U.S. at 687, McAuliffe has not identified any prejudice he suffered from counsel's failure to investigate. He asks us to remand to the district court for an evidentiary hearing to reveal the entirety of the tape's contents. However, McAuliffe expressly waived an evidentiary hearing in the district court when he filed his reply to the

government's response to his § 2255 motion. *See* No. 2:03-cr-00070, R. 176, Reply Brief, Page ID 592, 612. In light of his waiver, we will not remand for an evidentiary hearing. We conclude that McAuliffe failed to meet the prejudice prong of *Strickland*, and relief on this ground is unwarranted.

### 3. Failure to Move to Suppress the Settlement Tape

McAuliffe's final claim of ineffective assistance is based on his attorneys' failure to move to suppress a taped conversation between Faller and himself. He contends the conversation took place during a settlement discussion and was not admissible in evidence under Federal Rule of Evidence 408.

The settlement discussion pertained to a lawsuit McAuliffe filed against Faller regarding a dispute over their joint business venture, Judge-R-Work. During negotiations with their attorneys, Faller asked McAuliffe to speak with him alone. Faller then falsely told McAuliffe that he had tapes of their earlier conversation in which they planned the arson. Faller hoped his fabrication would induce McAuliffe into making inculpatory statements on a surreptitious recording, which could be used against McAuliffe in a criminal proceeding pursuant to the immunity deal Faller already had made with the government. Although McAuliffe did not take the bait and admit to the arson scheme, his statements nonetheless could be construed as suspicious because he never inquired as to how Faller could have recordings of a conversation that never took place, as one might expect from an innocent person. *Cf. United States v. Jinadu*, 98 F.3d 239, 244 (6th Cir. 1996) ("When a statement is offered as an adoptive admission [under Federal Rule of Evidence 801(d)(2)(B)], the primary

inquiry is whether the statement was such that, under the circumstances, an innocent defendant

would normally be induced to respond.").

At the time of McAuliffe's trial in 2004, Rule 408 provided as follows:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

McAuliffe devotes most of his discussion of this issue to whether Rule 408 applies in

criminal cases. In *United States v. Logan*, 250 F.3d 350, 367 (6th Cir. 2001), we held that this

version of Rule 408 "does not serve to prohibit the use of evidence from settlement negotiations in

a criminal case"; but in a much earlier holding in *Ecklund v. United States*, 159 F.2d 81, 84-85 (6th

Cir. 1947), we stated that a defendant's settlement in a civil case was inadmissible as evidence of

criminal guilt. A 2006 rule amendment that became effective after McAuliffe's trial conclusively

settled a circuit split in favor of applying Rule 408 in criminal cases, thereby abrogating *Logan*. *See*

Fed. R. Evid. 408 (2006); *United States v. Davis*, 596 F.3d 852, 860 & n.6 (D.C. Cir. 2010).

Because *Logan* stated this circuit's law at the time McAuliffe was tried, defense counsel did not

perform deficiently under *Strickland* by failing to undertake the futile task of moving to suppress the

settlement tape.

Furthermore, the principal inquiry that determines whether Rule 408 bars introduction of evidence of settlement offers—or statements made during settlement negotiations—must be toward the purpose for which the evidence is being offered. *See, e.g.*, *Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 519 (6th Cir. 2008) (holding that evidence of settlements offered to prove a party's state of mind, but not to show liability for or the amount of a claim, was proper). Evidence of settlement discussions is barred by Rule 408 only if it is offered "to prove liability for or invalidity of the claim or its amount," Fed. R. Evid. 408 (1974), or, under the current version of the rule, "to impeach through a prior inconsistent statement or contradiction," Fed. R. Evid. 408(a) (2006). *Arnold v. Wilder*, 657 F.3d 353, 366-67 (6th Cir. 2011).

The tape-recorded discussion between Faller and McAuliffe occurred in the context of a purported effort to settle a lawsuit filed by McAuliffe against Faller. It is plain from the record that the contents of the conversation were not offered in McAuliffe's criminal trial to prove the liability of either one in the civil dispute or the amount of those claims. Instead, the evidence was offered for the "[]other purpose" of showing McAuliffe's knowledge of and participation in illegal acts—in other words, his state of mind, which Rule 408 allows. *Croskey*, 532 F.3d at 519. Objecting to the tape recording on the ground of Rule 408 would have been pointless, and failing to do so certainly did not amount to deficient performance by defense counsel. *United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004) ("[C]ounsel cannot be said to be deficient for failing to take frivolous action . . . [and] failing to make a motion with no chance of success could not possibly prejudice the outcome.").

**C. Jury Instructions**

McAuliffe asserts that he was denied his Fifth Amendment right to a fair trial when the district court improperly substituted "knowingly" for "maliciously" in its instructions to the jury as the mens rea the prosecution was required to prove to establish a violation of 18 U.S.C. § 844(h).[4] However, this claim is doubly procedurally defaulted because McAuliffe did not raise it at trial or on direct appeal. *See Regalado,* 334 F.3d at 528 ("Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process."); *see also Napier v. United States*, 159 F.3d 956, 961 (6th Cir. 1998).

McAuliffe relies on a pair of Tenth Circuit cases to circumvent procedural default. In *United States v. Pearl*, 324 F.3d 1210, 1213 (10th Cir. 2003), the defendant moved to dismiss the indictment on constitutional grounds, but the district court denied the motion and submitted instructions to the jury that contained both constitutional and unconstitutional definitions. The Tenth Circuit ruled that the defendant's motion to dismiss preserved his right to challenge the jury instructions on direct appeal. *Id.* In *United States v. Hathaway*, the court held that "[a] defendant cannot waive his right to challenge an indictment based upon its failure to charge an offense." 318 F.3d 1001, 1010 (10th Cir. 2003) (citing Fed. R. Crim. P. 12(b)(2)). Putting these two cases together, McAuliffe argues that his jury instruction claim is not procedurally defaulted because it was preserved by his challenge to

---

[4]Like the ineffective assistance claim regarding the expert experiment, we see little indication that McAuliffe directly raised this claim before the district court or in his COA application. Again, however, the Government forfeited any waiver argument about whether this claim is within the scope of the COA. *See Boudreau*, 564 F.3d at 435.

the indictment on direct appeal. But McAuliffe cites no cases in which a challenge to the indictment on direct appeal was sufficient to preserve a challenge to the jury instructions on collateral review. To the contrary, this court has recognized that a § 2255 petitioner who failed to object to alleged trial errors in the trial court or on direct appeal must show cause and prejudice for the "double procedural default." *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (quoting *Frady*, 456 U.S. at 167). McAuliffe makes no attempt to satisfy this standard and is thus barred from relief on this ground under § 2255.

## D. McAuliffe's Pro Se Briefs

McAuliffe raises several additional arguments in lengthy pro se appellant principal and reply briefs. However, this court denied McAuliffe's request to file supplemental briefing because he is represented by counsel, and McAuliffe has withdrawn his requests for reconsideration of that denial. Accordingly, we decline to consider these additional issues. *See United States v. Williams*, 641 F.3d 758, 770 (6th Cir. 2011).

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court denying McAuliffe's § 2255 motion to vacate his sentence.