RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0190p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JAMES ROY SYLVESTER, JR.,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

No. 15-1782

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 1:03-cr-20008-1; 2:10-cv-15151—David M. Lawson, District Judge.

Argued: April 26, 2017

Decided and Filed: August 22, 2017

Before: MERRITT, GILMAN, and DONALD, Circuit Judges

---

## COUNSEL

**ARGUED:** Daniel J.T. Schuker, HOGAN LOVELLS US LLP, Washington, D.C., for Appellant. Andrew Goetz, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Daniel J.T. Schuker, HOGAN LOVELLS US LLP, Washington, D.C., for Appellant. Janet Parker, UNITED STATES ATTORNEY'S OFFICE, Bay City, Michigan, Mark Chasteen, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

DONALD, J., delivered the opinion of the court in which GILMAN, J., joined. MERRITT, J. (pg. 13), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

BERNICE BOUIE DONALD, Circuit Judge.  Petitioner James Roy Sylvester, Jr. was convicted by a federal jury of possession with intent to distribute five kilograms or more of cocaine, possession with intent to distribute five grams or more of cocaine base, possession of a firearm in furtherance of a drug-trafficking offense, felon in possession of a firearm, possession of marijuana, possession with intent to distribute oxycodone, diazepam, hydrocodone, and codeine, using interstate travel to acquire and transport five kilograms of cocaine, personally traveling in interstate commerce to acquire five kilograms of cocaine, and conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine.  He was sentenced to 35 years of imprisonment.  A panel of this Court affirmed Sylvester's conviction and sentence on direct appeal.  Sylvester then filed this present motion to vacate his sentence under 28 U.S.C. § 2255 on the grounds that his trial and appellate counsel rendered ineffective assistance in failing to pursue his claims of Speedy Trial Act violations.  The district court dismissed Sylvester's motion, finding that Sylvester failed to show that he was prejudiced by his counsels' allegedly deficient performances.  Because the district court correctly determined that Sylvester failed to show prejudice, we **AFFIRM** the order dismissing Defendant's § 2255 motion.

I.

A.

Sylvester was arrested in February 2003 in connection with a drug conspiracy intending to transport large quantities of cocaine and other illegal substances from California to Michigan.  On February 26, 2003, a federal grand jury returned an indictment against Sylvester charging two counts of possession with intent to distribute various amounts of cocaine and crack cocaine.  Later that same day, the government filed a first superseding indictment, changing the wording in counts one and two to reflect that Sylvester "knowingly" possessed the drugs referenced in the indictment (the "First Superseding Indictment").  On April 9, 2003, the government filed a

second superseding indictment adding a charge for knowing possession of a firearm in furtherance of a federal drug-trafficking crime (the "Second Superseding Indictment"). On May 28, a third superseding indictment was filed adding eight new charges against Sylvester. Over the next year and a half, the government filed five additional superseding indictments, three of which added either new charges or co-defendants, while the other two modified or revised existing charges. Sylvester went to trial on September 13, 2005, and on September 21, 2005 he was found guilty on twelve of the thirteen counts brought against him. He was sentenced to a total of thirty-five years in prison.

B.

In the underlying petition, Sylvester claims two violations of the Speedy Trial Act (the "Act"), relating to the First and Second Superseding Indictments. Regarding the First Superseding Indictment, the Speedy Trial Clock (the "Clock") started running on February 26, 2003, but was stopped the same day due to a detention motion filed by the government. The Clock restarted on March 3, 2003, when the trial court resolved the detention motion and ran until March 18, 2003, when Sylvester obtained new counsel and requested time for his new counsel to get up to speed on the case. The trial court tolled the Clock until May 4, 2003 in accordance with Sylvester's request. By that point, fourteen days had run off of the Speedy Trial Clock. On May 4, the Clock began running again and ran until July 9, 2003, when Sylvester again requested new counsel. At that point, the Speedy Trial Clock had run for seventy-nine days, already exceeding the seventy-day limit established by the Act. The trial court resolved Sylvester's request for new counsel on July 16, 2003, and the Clock began running again. The Clock stopped again on July 23, 2003 when the government requested clarification on the status of Sylvester's defense counsel.[1] By that point 85 days had run on the Speedy Trial Clock. The Clock was tolled until September 12, 2003, so that new counsel could be engaged, and again until November 6, 2003, so that counsel could get up to speed. On October 27, 2003, a fourth superseding indictment was filed adding a new defendant and restarting the Speedy Trial Clock.

---

[1]The District Court opinion notes that the Speedy Trial Clock paused on July 9 and resumed on July 16. It then incorrectly counts the days that elapsed against the Speedy Trial Clock. However, the district court's error appears to be only typographical.

The Second Superseding Indictment was filed on April 9, 2003. The Clock for the charge brought under that indictment should have started running on April 16, 2003, when Sylvester was re-arraigned, but the court had already tolled the Clock until May 4 in order for Sylvester's new counsel to become familiar with the case. Thus, the Clock for the charge brought under the Second Superseding Indictment started running on May 4 when the Clock resumed for the charges brought under First Superseding Indictment. The Clock ran until July 9, when Sylvester's counsel requested to withdraw from the case. At that point, 65 days had run on the Speedy Trial Clock for the Second Superseding Indictment. As described above the Clock resumed on July 16, 2003, and was tolled again on July 23. By that point, 71 days had run on the Speedy Trial Clock for the charge brought under the Second Superseding Indictment, exceeding the 70-day limit set by the Act. Sylvester makes no allegation of speedy trial violations after July 23, 2003, and the record shows that the remaining delay was largely the result of motions filed by the defense.

On November 19, 2004, Sylvester filed a motion to dismiss based on the pretrial delays. However, counsel never specified an exact violation. Rather Sylvester's counsel vaguely referred to an "unreasonable long delay of 348 days between Defendant's Arraignment and the Trial." *Id*. at ID # 464–65. After supplemental briefing, the district court denied the motion to dismiss. The district court stated that the defendant bears the burden of "producing a calendar and showing that more than seventy days have passed since the indictment (or first appearance) and trial has yet to begin." R. 145, ID # 679 (quoting *United States v. Jenkins*, 92 F.3d 430, 438 (6th Cir. 1996)). The trial court then incorrectly concluded that because Sylvester "was arraigned on a second superseding indictment that added a new charge[,] . . . the clock again restarted." *Id*. After his conviction, Sylvester directly appealed his conviction on the grounds that his "statutory and constitutional rights to a speedy trial were violated." *United States v. Sylvester*, 330 F. App'x 545, 546 (6th Cir. 2009). On appeal, Sylvester's counsel argued that "[s]uperseding indictments do not . . . affect the running of the statutory speedy trial clock." Brief for Appellant at 18, *Sylvester*, 330 F. App'x 545 (No. 06-1760). However, again, Sylvester's counsel failed to identify a specific violation of the Act, instead arguing that "it would appear that appellant Sylvester's trial did not commence until far more than the 70 days permitted by § 3161 had passed." Appellant's Supplemental Citation at 2, *Sylvester*, 330 F.

App'x 545 (No. 06-1760). Citing the fact that Sylvester's appellate counsel never provided specific information related to the alleged violations of the Act, a panel of this Court rejected Sylvester's Speedy Trial Act argument as forfeited. *Sylvester*, 330 F. App'x at 549.

Sylvester then filed a motion to vacate his sentence under 28 U.S.C. § 2255 on the grounds that his trial and appellate counsel rendered ineffective assistance in failing to adequately pursue his Speedy Trial Act claims. Although it held that the trial court erred in determining that the Speedy Trial Clock had not run and that Sylvester's counsel rendered deficient performance by not bringing specific violations to the attention of the court either at trial or on appeal, the district court denied Sylvester's motion on the ground that the deficient performance notwithstanding, Sylvester had not made a sufficient showing of ineffective assistance because he failed to show that he was prejudiced by his counsels' actions. The district court granted a certificate of appealability on this issue, and Sylvester filed a timely appeal.

II.

The Speedy Trial Act was enacted to "g[i]ve effect to a Federal defendant's right to a speedy trial under the Sixth Amendment." *United States v. Rojas-Contreras*, 474 U.S. 231, 238 (1985) (Blackmun, J., concurring) (citation omitted). In furtherance of this goal, the Supreme Court established strict timelines for the various stages of the criminal trial process. *Id*. The Act requires that the relevant charges "be dismissed or otherwise dropped" in response to any violation of the Act's provisions. *See* 18 U.S.C. § 3162(a)(1). As relates to these proceedings, "[t]he Act, as amended, requires that a defendant be brought to trial within 70 days of his first appearance through counsel." *Rojas-Contreras*, 474 U.S. at 238-39 (Blackmun, J. concurring) (citing 18 U.S.C. § 3161(c)(1)). The Act also lists a number of events, or excludable delays, during which the Speedy Trial Clock is tolled for the purposes of calculating the seventy-day period. 18 U.S.C. § 3161(h).

Notably, the Act does not provide for a resetting of the Speedy Trial Clock for existing charges where the government has filed a superseding indictment adding new charges to existing ones. Sylvester's claims center around the First and Second Superseding Indictments, neither of which added new defendants. In fact, only the Second Superseding Indictment added any

charges.  The First Superseding Indictment, filed the same day as the initial indictment, merely makes a minor change to the original charges.  Although this Circuit has not addressed this issue directly, the majority of our sister circuits have held that "[t]he filing of a superseding indictment does not affect the speedy trial clock for offenses charged in the original indictment."  *United States v. Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994) (citations omitted); *United States v. Young*, 528 F.3d 1294, 1296 (11th Cir. 2008) ("[N]either the filing of a superseding indictment, nor the dismissal of an original indictment followed by the filing of a new indictment, resets the speedy-trial clock."); *United States v. Daychild*, 357 F.3d 1082, 1091 n.10 (9th Cir. 2004) ("The clock's start time in this case is unaffected by the superseding indictments."); *United States v. Marshall*, 935 F.2d 1298, 1302 (D.C. Cir. 1991) ("As a general rule, the filing of a superseding indictment does not affect the speedy trial clock for offenses either charged in the original indictment or required under double jeopardy principles to be joined with such charges."); *United States v. Long*, 900 F.2d 1270, 1275 (8th Cir. 1990) ("Because the Act does not re-start the 70 day clock when an indictment is dismissed and a second returned, but merely tolls the time between dismissal of the first and arraignment on the second, it would make no sense to re-start the clock upon the return of a superseding indictment without dismissal of the first.") (citation omitted); *United States v. Roman*, 822 F.2d 261, 263–64 (2d Cir. 1987) ("We can see no logical reason to apply a different rule to a superseding indictment simply because it is filed sooner, while the first indictment is still pending."); *United States v. Thomas*, 788 F.2d 1250, 1258 (7th Cir. 1986) ("The superseding indictment does not affect the running of the time on the three charges that were in the original indictment as well as the superseding indictment."); *United States v. Novak*, 715 F.2d 810, 819 (3d Cir. 1983) ("[W]henever the court determines from the face of the indictment that a superseding indictment charges an offense that is the same as, or required to be joined with, an offense charged in the original indictment within the meaning of subsection (h)(6) and the Double Jeopardy Clause, trial on that offense must commence within the time limitation for trial applicable to the original indictment."); *see also Rojas-Contreras*, 474 U.S. at 235-36 ("[W]here a superseding indictment adds new charges, trial of the original charges must begin within the time limit for commencement of trial on the original indictment or information") (quotation omitted) (citation omitted).

In light of this persuasive precedent, the district court determined that the Speedy Trial Clock exceeded seventy days for both the First and Second Superseding indictments, the First Superseding Indictment by fifteen days and the Second Superseding Indictment by one day. Had the trial court been made aware of these violations, it would have been compelled by the Act to dismiss the charges in both indictments. 18 U.S.C. §§ 3161(c)(1), 3162(a)(2); *see also Zedner v. United States*, 547 U.S. 489, 507 (2006). Although "a defendant has no duty to bring himself to trial and has no duty to bring any delay to the court's attention," *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000), the Act "assigns the role of spotting violations of the Act to the defendant – for the obvious reason that they have the greatest incentive to perform this task." *Zedner*, 547 U.S. at 502-03.

A federal prisoner may successfully challenge his sentence under 28 U.S.C. § 2255 by showing that his sentence "was imposed in violation of the Constitution or laws of the United States." An ineffective assistance of counsel claim may be used to prove such a constitutional violation, even where the underlying claim "cannot otherwise be reviewed for the first time on a § 2255 motion." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). In reviewing claims of ineffective assistance of counsel, this Court applies the two prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). In order to satisfy the requirements set by *Strickland*, Sylvester must first show that his counsel provided deficient performance and second that the deficient performance prejudiced Sylvester's defense. *Strickland*, 466 U.S. at 687. The first prong requires Sylvester to "show that counsel's representation fell below an objective standard of reasonableness," and the second prong requires Sylvester to "show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Although Sylvester has made a satisfactory showing that his counsel provided deficient performance, he has not shown that the deficient performance prejudiced his defense. Thus, the district court was correct in denying Sylvester's motion to vacate his sentence under § 2255.

1.    Deficient Performance

A counsel provides deficient performance where the "counsel's representation f[alls] below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The *Strickland*

Court held that petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and should be guided by a measure of "reasonableness under prevailing professional norms." *Id*. at 688-89. Counsel need not pursue every possible claim or defense in order to avoid a finding of deficient performance. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2009) ("[A]ppellate counsel need not raise every nonfrivolous argument on direct appeal."). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quotation and citation omitted).

Sylvester's claims of deficient performance are based in his counsels' failure to fully pursue the argument for a dismissal based on a violation of the Speedy Trial Act, even, in the case of appellate counsel, where counsel was directed by this Court to clarify the Speedy Trial Act argument. Indeed, Judge Ryan, writing for this Court in response to Sylvester's direct appeal, stated that "[b]y any conventional measure of forfeiture, Sylvester has forfeited this [Speedy Trial] argument." *United States v. Sylvester*, 330 F. App'x 545, 550 (6th Cir. 2009). Because Sylvester has shown that his trial and appellate counsel failed to raise a meritorious claim regarding violations of the Speedy Trial Act, even where prompted by this Court, Sylvester has shown that his counsel rendered deficient performance. He has thus satisfied the first *Strickand* requirement.

The government also argues that the Speedy Trial Act does not expressly address a situation as the present one, where the government filed a superseding indictment while a prior indictment is still pending. The government is correct that the Act addresses only scenarios in which a subsequent indictment has been filed after the defendant successfully moves for dismissal or after the government moves to dismiss the prior indictment. However, as the Eleventh Circuit correctly noted, "the exclusion of the period of time between the dismissal of an indictment and the filing of a new indictment under § 3161(h)(6), as well as the Speedy Trial Act more generally, would make little sense if the government could reset the speedy-trial clock at will and effectively 'circumvent[] the speedy trial guarantee through the simple expedient of

obtaining superseding indictments with minor corrections.'" *Young*, 528 F.3d at 1296 (quoting *Bermea*, 30 F.3d at 1567).

The government then argues that the facts in this case can be distinguished from the precedent of our sister circuits on this point because the Second Superseding Indictment did not just make minor changes, but rather added new charges. The government continues that where a superseding indictment adds new substantive charges, it should be considered as one of the "other proceedings" excluded from the 70-day clock by the Act. Under this argument, the 70-day period for the original indictment would begin to toll as soon as a subsequent indictment bringing more charges against the defendant was filed. It is unclear when, or if, the Clock would start running again on the original indictment. In spite of the government's contention that, like enumerated examples provided in the Act, a superseding indictment bringing new charges would toll the Clock only on the original charges, the effect of accepting this argument would be to restart the seventy-day clock with each superseding indictment that adds substantive charges. The government cites no precedent in which a court has adopted this argument, but rather points to this Court's obligation to grant "a broad interpretation as to what is a 'proceeding'" under the Act. *United States v. Robinson*, 887 F.2d 651, 656 (6th Cir. 1989). This thinly supported argument is not strong enough to create a circuit split on this issue.

Because the Speedy Trial Act was violated and those violations would have led to a dismissal of the charges brought under the First and Second Superseding Indictments, Sylvester's counsel rendered deficient performance by not bringing those violations to the attention of the court either at trial or on appeal. Although we find that Sylvester's counsel rendered deficient performance in not pursuing the Speedy Trial Act argument, we nevertheless deny Sylvester's § 2255 motion because Sylvester was not prejudiced by his counsels' inaction.

2.      Prejudice

In order to prove that he has been prejudiced by his counsels' deficient performances, Sylvester must show by "a reasonable probability that, but for counsels' errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. In making this showing,

"[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, Sylvester must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. Although the trial court would have been required to dismiss the charges brought in the First and Second Superseding Indictments, it was within the trial court's discretion to dismiss the case with or without prejudice. 18 U.S.C. § 3161(a)(2); *United States v. Myers*, 666 F.3d 402, 404 (6th Cir. 2012). Where the defendant "has not demonstrated that, but for his trial and appellate attorneys' unprofessional errors, the district court or this court on direct appeal would have ordered dismissal of the prosecution with prejudice based on a Speedy Trial Act violation," he has not shown that counsels' deficient performance "chang[ed] the result of the proceeding." *McAuliffe v. United States*, 514 F. App'x 542, 546 (6th Cir. 2013). Because Sylvester cannot show that the trial court would have dismissed the First and Second Superseding Indictments with prejudice, he has not shown that he was prejudiced by his counsels' deficient performance.

In accordance with the Act, trial courts must take into account three factors "when deciding whether to dismiss an action with or without prejudice: 1) the seriousness of the offense; 2) the facts and circumstances that led to the dismissal; and 3) the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice." *United States v. Moss*, 217 F.3d 426, 430 (6th Cir. 2000) (citing 18 U.S.C. § 3162(a)). Regarding the first factor, this Circuit has found the type of charges filed against Sylvester in the First and Second Superseding Indictments to be serious in assessing whether to dismiss a claim with or without prejudice due to a Speedy Trial Act violation. *See id*. at 431 (categorically labeling drug offenses as serious); *see also United States v. Carnes*, 309 F.3d 950, 957 (6th Cir. 2007) (finding possession of a firearm by a felon to be a serious offense).

Regarding the second factor, this Circuit considers whether the delay resulted from "prosecutorial bad faith," whether there was "any attempt to take advantage of the delay," and whether "defendant can show a pattern of negligence on the part of the United States Attorney's Office." *United States v. Howard*, 218 F.3d 556, 561 (6th Cir. 2000). "Where there is no affirmative misconduct by either party, the court's conclusion that this second factor authorizes dismissal with or without prejudice is a matter within its discretion." *United States v. Pierce*, 17

F.3d 146, 149 (6th Cir. 1994). There is no evidence of prosecutorial bad faith in the record. Nor does Sylvester point to any attempt to take tactical advantage of the delay. Finally, there is no evidence of a pattern of negligence on behalf of the United States Attorney's Office or the court. Sylvester argues that errors made by the government in filing improper indictments, his own counsel failing to identify the error, and the trial court misconstruing the case law constitutes a pattern of neglect. Although Sylvester has pointed out a series of errors, he failed to identify a pattern of negligence on the part of the United States Attorney's Office. As a result, the second factor leans against dismissing the case with prejudice.

Regarding the third and final factor, "[t]he main considerations that courts have taken into account . . . are whether the defendant suffered actual prejudice as a result of the delay, and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *Howard*, 218 F.3d at 562. In terms of the impact on Sylvester's liberty and finances, he was being held on other charges at the time of the violation and thus cannot make a claim of prejudice due to a loss of liberty. *See United States v. Taylor*, 487 U.S. 326, 341 (1988) (Where "respondent was being held to answer not only for the drug charges but also on a valid bench warrant," there was no "additional restrictions or burdens on his liberty as a result of the speedy trial violation.").

Sylvester instead argues that, due to the violative delay, two potential witnesses who would have supported his defense at trial passed away before the trial and were thus unavailable. One, his grandfather, could have offered testimony regarding the cash found in Sylvester's possession at the time of his arrest, while the other, Marvel Wooden, could have offered testimony regarding the weapon found at the time of arrest, which was allegedly given to Sylvester as collateral for money that Mr. Wooden owed him. The trial court has already found the absence of these witnesses non-prejudicial, and Sylvester has produced no new evidence to suggest that this previous finding was made in error. Further, because "there is no evidence here of prosecutorial misconduct that must be deterred to ensure compliance with the Act," the third factor supports dismissal without prejudice. *Pierce*, 17 F.3d at 149. Accordingly, Sylvester has not shown that the trial court would have dismissed the charges with prejudice. Because he has not shown that the charges would have been dismissed with prejudice, Sylvester has not shown

that the result of the proceeding would have been different but for the deficient performance. *McAuliffe*, 514 F. App'x at 546.

### III.

The district court correctly assessed that, even though Sylvester's trial and appellate counsel rendered deficient performance, Sylvester has not shown that he was prejudiced by that performance. Accordingly, we **AFFIRM** the district court's denial of Sylvester's § 2255 motion.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting. I am not as convinced as my colleagues that there was no "prejudice" as a result of the death of two of Sylvester's potential witnesses during the inordinate delay caused by the eight superseding indictments. Apparently, one of the witnesses, Sylvester's grandfather, would have testified that there was an innocent explanation for Sylvester's possession of cash at the time of his arrest. The other witness would have testified that the weapon was given to Sylvester as collateral for money the witness owed him. The prosecutor during final argument called this claim simply a "cockamamie story." The prosecutor used the absent witnesses as a further basis for conviction instead of a basis for acquittal if the jury believed the witnesses' testimony.

The Supreme Court has said that we should be more open to claims of "prejudice," warning that "[i]f witnesses die or disappear during a delay, the prejudice is obvious." This statement appears in a Supreme Court opinion in *Barker v. Wingo*, 407 U.S. 514, 532 (1972), in which the Court said:

> Prejudice, of course, should be assessed in light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. *If witnesses die or disappear during a delay, the prejudice is obvious*.

*Id.* (emphasis added).

Hence, instead of dismissing the case, I would remand this case to the district court with instructions to consider that the element of "prejudice" has been established and the court should reconsider the remedy in the case.