NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0353n.06

Case No. 22-3426

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | **FILED** |
| | ) | Aug 02, 2023 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | ON APPEAL FROM THE UNITED |
| DAMON LAMONT IRBY, | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| Defendant-Appellant. | ) | OHIO |
| | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; DAVIS and MATHIS, Circuit Judges.

SUTTON, Chief Judge. FBI agents raided a home in Youngstown, Ohio. Inside they found Damon Irby. Outside they found a hat, a gun, and crack cocaine. That discovery led to a felon-in-possession conviction and a 96-month sentence. Seeing no error, we affirm.

I.

On the morning of February 4, 2019, FBI agents prepared to raid Irby's home to execute an arrest warrant for his brother. A surveillance team saw two people—Irby's minor sons, Dwayne (age 15) and Damon Jr. (age 17)—exit the front porch and walk around to the home's backyard. When the raid began minutes later, two agents circled around to monitor the pair. After securing Damon Jr. and Dwayne, the agents retraced the duo's footprints in the snow. The trail led behind the garage of a neighboring home, where agents found a winter hat, a loaded pistol, and several bags filled with crack cocaine. Meanwhile, other agents found Irby inside the home along with

his mother and a second brother. There, they seized baggies and a digital scale encrusted with crack cocaine. Having failed to locate their target, they left without arresting anyone.

Agents shipped the hat and gun to the FBI lab in Quantico, Virginia for DNA testing. In October 2020, they received results identifying Irby as the primary DNA contributor to both items.

On March 5, 2021, an unknown individual murdered Damon Jr., one of Irby's sons, in a shooting. Irby took to social media and vowed to hunt down those responsible. The threats triggered an FBI policy requiring the immediate arrest of suspects who endanger public safety. On March 8, a magistrate judge approved a criminal complaint charging Irby with possessing a firearm as a felon. Agents arrested him that day. But the government failed to file an indictment within the 30 days required by the Speedy Trial Act. 18 U.S.C. § 3161(b). Realizing its error, the government moved to dismiss the complaint without prejudice. On April 21, the court granted the motion.

The same day, a magistrate judge approved a second complaint, again charging Irby with possessing a firearm as a felon. Irby refused to self-surrender and did not reenter federal custody until his arrest on unrelated state charges in September.

His trial started two months later. Irby's defense centered on his son, Dwayne, who testified that the gun and drugs belonged to Damon Jr. According to Dwayne, Damon Jr. brought the hat, gun, and drugs with him when the pair went outside to feed the dogs. When Damon Jr. saw FBI agents approaching, he tossed aside the contraband. The jury convicted Irby and the district court imposed a 96-month sentence, an upward variance from the 51- to 63-month Guidelines range.

II.

Irby advances several challenges to his conviction and sentence.

*Sufficiency of the evidence.* Irby claims that the government failed to prove that he possessed the firearm. To resolve this challenge, we construe all evidence in favor of the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

A rational juror could find that Irby possessed the gun. Agents, it is true, did not find Irby holding it. But constructive possession—that Irby "knowingly ha[d] power and intention to exercise control over an object"—satisfies the statute as well. *United States v. Critton*, 43 F.3d 1089, 1096 (6th Cir. 1995). Circumstantial evidence alone may establish constructive possession, even if it does not "remove every reasonable hypothesis except that of guilt." *United States v. Sadler*, 24 F.4th 515, 551 (6th Cir. 2022) (quotation omitted). Constructive possession requires presence at the scene coupled with "other incriminating evidence." *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc) (quotation omitted).

The DNA evidence forges that link. Testing identified Irby as the primary DNA contributor to the gun and the hat. *See United States v. Raymore*, 965 F.3d 475, 484–85 (6th Cir. 2020) (status as major DNA contributor supports finding possession). And it revealed that the gun—but not the hat—featured Damon Jr.'s DNA. These results, combined with the other circumstantial evidence presented, adequately support the government's theory of constructive possession—that Irby spotted the agents preparing for the raid and directed Damon Jr. to conceal the gun in Irby's winter hat and hide it outside.

Dwayne's testimony pointing the finger at his deceased brother (Damon Jr.) does not alter this conclusion. Dwayne's story raised as many questions as answers. Why would Damon Jr.

bring his gun and drugs, along with his father's winter hat, with him to feed the dogs? How did the contraband end up behind the neighbor's garage, rather than near the dogs' cages? And why didn't the agents see Damon Jr. throw anything if he tossed the evidence aside as they approached? A rational jury could fairly disbelieve Dwayne's story, a credibility finding that we will not second guess on appeal. *See United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994).

Irby adds other arguments that the jury considered and rejected. No one saw him with the gun, he emphasizes, and transference could explain the presence of his DNA on the gun. All plausible points, we agree. But when faced with plausible branching paths, we let the jury pick the way. *See United States v. Sammons*, 55 F.4th 1062, 1075 (6th Cir. 2022).

Other constructive possession cases, Irby insists, featured more and better evidence. *See United States v. Horton*, 742 F. App'x 973, 974 (6th Cir. 2018) (finding sufficient evidence); *United States v. Flores*, No. 21-2974, 2022 WL 2812889, at *14–15 (6th Cir. July 19, 2022) (same). True or not, the reality that stronger evidence may have supported other convictions does not tell us whether sufficient evidence supported Irby's. On this record, the jury could fairly find Irby guilty.

*Pre-indictment delay.* Irby contends that the delay between his February 2019 offense and April 2021 indictment violated his Fifth Amendment Due Process rights. *See United States v. Lovasco*, 431 U.S. 783 (1977). Pre-indictment delay violates due process if (1) the government engages in "intentional" delay designed "to gain a tactical advantage" (2) that results in "substantial prejudice to [the defendant's] right to a fair trial." *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009) (quotation omitted). To make this difficult showing—one case calls it "nearly insurmountable," *United States v. Rogers*, 118 F.3d 466, 477 n.10 (6th Cir. 1997)—Irby must establish the lack of a "valid reason for the delay," *Schaffer*, 586 F.3d at 426 (quotation

omitted). Insinuation does not suffice. We may "neither impute[] nor presume[] an improper purpose." *Id.*

Irby's claim founders on his failure to identify any proof of deliberate delay. Abundant evidence bears out the government's attribution of the delay to ongoing "investigative efforts" slowed by the COVID-19 pandemic. *United States v. Lively*, 852 F.3d 549, 566 (6th Cir. 2017) (quotation omitted). The investigatory timeline shows consistent, if slow, progress. In June 2019, testing determined that the gun contained DNA from three males. In October, an FBI agent collected a DNA sample from Irby, and in August and September 2020, agents secured DNA from Damon Jr. and Dwayne. By November, the lab had completed DNA testing. Four months later, the government filed charges. This record reveals a prosecutor waiting "to seek indictments until he is completely satisfied that he . . . will be able promptly to establish guilt beyond a reasonable doubt." *Lovasco*, 431 U.S. at 795. That is not undue delay.

Irby claims that the government *must* have acted in bad faith because the case was not sufficiently "complex" to warrant the delay. Appellant's Br. 13. But speculation of this sort falls short. *Schaffer*, 586 F.3d at 426.

Irby adds that his arrest soon after the murder of Damon Jr., a potentially exculpatory witness, suggests bad faith. Not so. Irby's torrent of social media threats, not the murder, prompted his arrest. Those threats led agents to seek his detention immediately, with or without a completed investigation, for ample public-safety reasons. In the words of Irby's trial counsel, the FBI put the "preservation of life" "above" its "investigation." R.67 at 10. That's good police work, not bad faith.

*Speedy Trial Act.* Irby claims that the district court erred in dismissing the initial March charges without prejudice. The Speedy Trial Act requires the government to file an indictment

5

within 30 days of the defendant's arrest. 18 U.S.C. § 3161(b). If the government exceeds this limit, the court must dismiss the case. *Id.* § 3162(a)(1). But the Act gives the court discretion over whether to dismiss the indictment with prejudice or without it. *Id.* In exercising that discretion, the court should consider: (1) the seriousness of the offense; (2) the circumstances of the dismissal; and (3) the impact of re-prosecution on the administration of justice. *Id.* The second factor turns on government "bad faith" or a "pattern of negligence." *Sylvester v. United States*, 868 F.3d 503, 512 (6th Cir. 2017) (quotation omitted). The third factor boils down to the presence of "actual prejudice" to the defendant. *Id.* (quotation omitted).

None of these considerations favors Irby. *See United States v. Robinson*, 389 F.3d 582, 588–89 (6th Cir. 2004). Take the offense. Irby possessed a firearm as a felon, a serious crime as measured by the long sentences imposed for committing it. *See* 18 U.S.C. § 922(g)(1); *Robinson*, 389 F.3d at 588 (looking at sentence length to determine seriousness); *United States v. Nunley*, 29 F.4th 824, 827–28 (6th Cir. 2022) (affirming 112-month felon-in-possession sentence); *United States v. Carnes*, 309 F.3d 950, 957 (6th Cir. 2002) (Section 922(g)(1) is a "serious offense[]."). Turn to the circumstances of the dismissal. The government, to be sure, missed the indictment window by nearly two weeks. But Irby proffers no evidence of bad faith or systemic neglect. Nor does he offer any reason to doubt the government's representation that the "oversight" stemmed from the reduced frequency of grand jury meetings during the COVID-19 pandemic. Appellee's Br. 40. Non-willful errors of this sort do not do the trick. Else, all Speedy Trial Act dismissals would be with prejudice. *See Sylvester*, 868 F.3d at 512. Turn to the impact of re-prosecution. Irby does not identify any prejudice stemming from the government's error, and we can discern none. *See Robinson*, 389 F.3d at 589 (suggesting that time-served credit cures prejudice from pre-indictment incarceration). The court properly dismissed the indictment without prejudice.

*Post-indictment delay.* The passage of around eight months between Irby's initial arrest in March and trial in November, he claims, violated his Sixth Amendment right to "a speedy . . . trial." We disagree. For one, a trial that occurs only eight months after arrest generally *is* a speedy trial. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (only delay "approach[ing] one year" triggers further analysis); *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007) (approximately nine-month delay insufficient). For another, Irby's actions, not the government's, generated the bulk of the delay. After his release and reindictment in April, Irby refused to self-surrender. Not until September, when local police arrested him on domestic violence charges, did he reenter federal custody. A "fugitive from justice" has no grounds to complain of delay he caused. *Fouts v. United States*, 253 F.2d 215, 218 (6th Cir. 1958).

*Ineffective assistance of counsel.* Irby takes issue with his trial counsel's strategy and performance. But in line with "our custom," we decline to review his ineffective assistance claim on direct appeal. *United States v. Tisdale*, 980 F.3d 1089, 1098 (6th Cir. 2020).

*Procedural reasonableness.* Irby objects that the district court's explanation for the sentence did not suffice. Because he did not raise the objection at sentencing after being given a chance to do so, we review for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

The court's explanation sufficed by any measure. After properly calculating the Guidelines range and hearing argument, it weighed the good and the bad. It acknowledged Irby's difficult childhood, his struggles with addiction, and the "tragic[]" death of his son. R.67 at 62. But the aggravating factors still predominated. The court waded through Irby's "unique record," including two federal gun convictions carrying significant sentences. *Id.* at 16. It described Irby's inability to "live in the community lawfully" and his repeated failure to comply with addiction treatment,

7

leading to five supervised release revocation sentences. *Id.* at 21. Underscoring this reality, it noted that Irby committed the latest offense while on supervised release. It detailed Irby's threats in the wake of his son's murder, threats made all the more credible by Irby's violent history. And it remarked that Irby had led his minor children into crime.

In the language of the § 3553(a) factors, Irby's "history and . . . characteristics," the need to "protect the public," and the importance of adequate "deterre[nce]" permitted an upward variance. *Id.* at 63, 65, 70. Alone, the court found, these considerations "warranted" a statutory maximum sentence. *Id.* at 71. But after accounting for the positives and the negatives, it imposed a 96-month sentence. All of this satisfied the modest requirements of procedural reasonableness.

Irby persists that the court did not tell him why it selected the 96-month sentence rather than a lower variance. But "[h]aving explained its choice, the court had no duty to . . . clarify why [the] particular sentence was appropriate *rather than* an alternative." *United States v. Loos*, 66 F.4th 620, 625 (6th Cir. 2023) (quotation omitted).

*Substantive reasonableness.* Irby objects that his sentence was too long. As a "mine-run" defendant, he claims, he did not deserve an upward variance. *United States v. Milliron*, 984 F.3d 1188, 1198 (6th Cir. 2021). We review the length of a sentence for abuse of discretion. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).

The court did not abuse its discretion when it concluded that the § 3553(a) factors warranted an upward variance. Think about Irby's history and characteristics. Few defendants have racked up two "federal [gun] convictions" and five sentences for supervised release violations. R.67 at 65. Fewer still have enlisted their children in some of the criminal conduct. Irby's previous 42- and 65-month sentences also did not "deter[] him in any way." *Id.* His commission of the current offense while on supervised release exemplified this recalcitrant

8

recidivism. What about public protection? Irby's threats following his son's murder, the court found, were not idle bluster. And his long history of violence heightened his risk to the community. All told, the court reasonably found that Irby's "unique" characteristics warranted the chosen sentence. *Id.*

We affirm.